### REED v. THORNTON.
### No. 6161.

Circuit Court of Appeals, Ninth Circuit.

Oct. 13, 1930.

Oren R. Richards, of Portland, Or., for appellant.

S. J. Bischoff, of Portland, Or. (Wilbur, Beckett, Howell & Oppenheimer, Henry G. Kreis and John P. Ronchetto, all of Portland, Or., of counsel), for appellees.

Before DIETRICH and WILBUR, Circuit Judges, and WEBSTER, District Judge.

WILBUR, Circuit Judge.

Appellant was adjudicated a bankrupt upon an involuntary petition filed by three of his creditors on September 29, 1929. The bankrupt objected to the petition on the ground that it failed to conform to General Order No. 5 (11 USCA § 53), and an amendment was offered on the 6th day of November, 1929, and at that time two other creditors joined in a supplemental petition. Appellant bases his appeal upon the alleged fact that four of the six petitioning creditors have been paid and that the claims of the other two creditors are unliquidated.

It is conceded that Cress & Company, one of the intervening creditors, was paid. A payment was made to the assignor of D. L. Conley, one of the petitioning creditors, and not to D. L. Conley. In the case of National Electric Company, a petitioning creditor whose claim was $43.25, payment was made to the bookkeeper in the office of the company, but was promptly returned to the bankrupt, who refused to receive it and again returned it when it was again returned. The bankrupt claims that by these payments he has reduced the number of creditors to two and therefore the adjudication was improper. Furthermore, the claim of Gilbert L. Thornton, the principal creditor, for $7,615.75, was not liquidated and the claim of the Commercial Casualty Insurance Company for premium on the bond was not liquidated.

The jurisdiction of the court attaches from the filing of a petition signed by three creditors whose claims aggregate $500. Subsequent payment by the bankrupt of some of these creditors could not deprive the court of jurisdiction. As authority for this rather obvious proposition, we are content to cite a decision by the Circuit Court of Appeals of the Fifth Circuit, Ward Farming Co. v. Lowery, 295 F. 60. See, also, In re Bedingfield (D. C.) 96 F. 190; In re San Jose Baking Co. (D. C.) 232 F. 200.

As to the appellant's contention that the claims of Thornton and the Commercial Casualty Insurance Company are unliquidated and therefore cannot be considered in determining whether or not petition is signed by the requisite number of creditors, it is sufficient to say that that matter has been determined to the contrary by the Supreme Court of the United States in Grant Shoe Co. v. Laird Co., 212 U. S. 445, 29 S. Ct. 332, 53 L. Ed. 591, where the claims are based upon contracts, as in the case at bar.

██ It is claimed that Thornton was not a creditor at the time he signed the involuntary petition in bankruptcy. This claim is based on the fact that a written assignment was signed and filed with the amended petition in bankruptcy dated October 31, 1929, but it was shown that an oral assignment had been made long prior to the filing of the petition in bankruptcy, and that suit had been brought by Thornton as assignee upon such assignment claim as early as May 31, 1929. An oral assignment is sufficient under the law of Oregon. Levins v. Stark, 57 Or. 189, 110 P. 980.

██ Appellant makes the point that some of the creditors assigned their claims for the purpose of enabling petitioners to institute bankruptcy proceedings. General Order No. 5 was framed for the purpose of fully advising the court as to the situation of the petitioning creditors. That rule did not prevent, nor could it prevent, bona fide creditors from petitioning to have their debtor adjudged bankrupt. There is no question in this case but that the creditors were bona fide creditors and that the purpose of the petition was to secure the ratable distribution of the valuable assets of the bankrupt to his creditors. The evidence discloses that the bankrupt erected three apartment houses upon three different lots. Each was incumbered with a mortgage of $50,000, and mechanic's liens aggregating about $20,000 were filed on each of two lots, making an incumbrance of about $70,000 on these two apartment houses. The bankrupt's equity in the third apartment house was not incumbered. The bankrupt, on the 21st day of May, 1929, formed a corporation and conveyed these three properties to that corporation in exchange for stock of the par value of over $250,000, of which all but a few shares were issued to the bankrupt. Thereafter the new corporation proceeded to dispose of the assets which had been conveyed to it in exchange for its stock. The most valuable asset was conveyed to the bankrupt's attorney in consideration for $400, which was paid from the next month's rental of the property conveyed and a timber claim of doubtful value. The other two apartment houses are conveyed by the new corporation to employees of the bankrupt. Thereafter the bankrupt traded his stock in the corporation in small amounts to his employees. He also disposed of his residence. According to his testimony his financial operations left him without any assets whatever at the time the bankruptcy petition was filed. The referee found and the court adjudged that these transfers were fraudulently made with intention of delaying and defrauding the bankrupt's creditors. Of this there seems to be no doubt. There is no reason to believe that the petition was not filed in good faith. It is sufficient.

The other questions raised by the appellant, so far as they are not disposed of by our decisions on the foregoing points, are without merit.

The order is affirmed.

WEBSTER, District Judge, concurs.