**SHEEHAN & EGAN, Inc., et al. v. NORTH EASTERN SHOE CO.**
**No. 2520.**

Circuit Court of Appeals, First Circuit.
Feb. 11, 1931.

John M. Fogarty, of Lynn, Mass. (H. Ashley Bowen, of Lynn, Mass., on the brief), for appellants.

Walter M. Espovich, of Haverhill, Mass., for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

BINGHAM, Circuit Judge.

This is an appeal from a decree of the District Court for Maine dismissing an involuntary petition in bankruptcy. The ground assigned by the court was that it deemed "it for the best interest of creditors."

The involuntary petition was filed April 10, 1930, seeking to have the North Eastern Shoe Company, Inc., decreed a bankrupt. In the petition it was alleged that the respondent, for the greater portion of six months next preceding the date of the filing of the petition, had its place of business at Skowhegan in the county of Somerset and state and district of Maine, and had debts to the amount of $1,000; that the petitioners are creditors, having provable claims amounting in the aggregate, in excess of securities held by them, to the sum of $500; that the nature and amount of their claims were as follows: Sheehan & Egan, Inc., machinery and supplies, $395.50; Nicholas W. Mathey, machinery and supplies, $581.51; Julius Pamis, machinery and supplies, $632. In the petition it was also alleged that Julius Pamis of Haverhill, one of the petitioning creditors, did business under the firm name of the Haverhill Stitching Room Repair Company. It was also alleged that the respondent was insolvent, and that within four months next preceding the date of the petition had committed an act of bankruptcy, in that it had, on the 24th day of January, 1930, made a general assignment for the benefit of its creditors. The petition was signed by Sheehan & Egan, Inc., Nicholas W. Mathey, and Julius Pamis; and appended to it was an affidavit in which the petitioners made oath to the statements contained in the petition.

On April 29, 1930, the respondent filed an answer in which it only denied that it had committed the act of bankruptcy set forth in the petition or that it was insolvent.

On the same day (April 29, 1930) the respondent filed a petition to dismiss the involuntary petition, stating therein "that annexed hereto is a list of all its creditors with their respective addresses." This petition was signed by the North Eastern Shoe Company, by its treasurer, Clyde H. Smith; and appended thereto was a sworn affidavit of Clyde H. Smith "that the statement of facts contained in this petition are true and that the list of creditors annexed hereto is a true list of its creditors." In the list appears the name of the Haverhill Stitching Room Repair Company, 52 Wingate street, Haverhill, Mass., that being the name under which Julius Pamis did business as alleged in the involuntary petition.

May 1, 1930, the District Court entered an order that a trial would be had on the petition to adjudicate and a hearing be had upon the motion to dismiss on June 11, 1930, and that all the creditors named in the list should have at least ten days' notice thereof by mail. The notices were given.

On June 11, 1930, a hearing was had before the court on the answer and the motion to dismiss.

In the final decree, after reciting that the cause came on to be heard on the 11th of June, 1930, upon the answer and motion to dismiss the involuntary petition, it is stated that there were present at the hearing Mr. Egan, of the firm of Sheehan & Egan, Inc., and its attorney, Mr. Raymond Fellows; also Mr. Clyde Smith, president of the alleged bankrupt and his counsel, Mr. Walter M. Espovich. It is there also stated that almost all of the creditors (there being about 135 in all), except 2 who signed the involuntary pe-

tition and whose claims aggregate less than $1,000, had assented to an assignment for the benefit of creditors; that the third petitioning creditor, Julius Pamis, had ceased to be a creditor; that the court learned this fact by a conversation with Pamis over the telephone, in the presence of, and without objection by, counsel; and that said Pamis informed the court that he had no interest in the matter, and had been endeavoring to withdraw his name from the petition; that, in view of these facts and the fact that almost all of the creditors desired the estate to be settled under the assignment for the benefit of creditors, the court, deeming it for the best interest of the creditors, ordered the involuntary petition dismissed.

The record also contains a certificate of the evidence under equity rule 75 (28 USCA § 723). In this certificate it appears that, on January 24, 1930, the North Eastern Shoe Company made an assignment for the benefit of creditors to Clyde H. Smith, who appears to have been both president and treasurer of that company, and that the assignment had been assented to by nearly all of the creditors, but not by "those signing the petition." It also appears that at the trial Mr. Smith, the president and treasurer of the North Eastern Company and the common-law assignee, testified that some time after the petition was filed Pamis exhibited to him a conditional bill of sale of machinery and equipment in the factory of the North Eastern Shoe Company, and that he, being satisfied with the genuineness of Pamis' claim that this machinery had been sold reserving title, permitted him to take the machinery and equipment away, and Pamis accepted the property in full satisfaction of his claim. It also there appears that the court, with the consent of counsel for the petitioning creditor who was present, and the consent of Mr. Smith's counsel, called up Mr. Pamis by telephone, and had the conversation with him set out in the decree. It is also stated in this certificate that no objection was made to this proceeding; also that Sheehan & Egan., Inc., and Nicholas Mathey were the only creditors appearing in objection to the dismissal of the petition. But, inasmuch as the decree recites who were present, and does not include therein Nicholas Mathey, we understand the finding to be that he was not present at the hearing.

By their assignment of errors the appellants complain that the court erred in dismissing the involuntary petition either under the motion to dismiss or the answer.

It appears that none of the allegations of the petition, except those relating to the assignment for the benefit of creditors and to insolvency, were denied in the answer. This being so, all the other allegations of the petition were admitted to be true (McNutt v. Fidelity & Deposit Co. [C. C. A.] 293 F. 367, 369), and the court, having found that the respondent had committed the act of bankruptcy, charged, to wit, that the respondent had made a general assignment of its property for the benefit of creditors, nothing remained to be done that was essential to a decree of adjudication; for, the assignment of all the respondent's property being established, its insolvency became immaterial. West Co. v. Lea, 174 U. S. 590, 599, 19 S. Ct. 836, 43 L. Ed. 1098.

[3-5] Who are outstanding creditors and their number is to be determined as of the date of the filing of the petition. Who are petitioning creditors and the adequacy of their number is to be determined as of the date of the hearing, for between the date of the filing of the petition and the date of the hearing the statute allows other creditors to intervene and be joined in the petition. But an original petitioner, or one who has intervened and been permitted to join, cannot be allowed to withdraw to defeat the petition, against the objection of his copetitioners. See In re Coburn (D. C.) 126 F. 218; on appeal, Moulton v. Coburn (C. C. A.) 131 F. 201, and Myron M. Navison Shoe Co. v. Lane Shoe Company (C. C. A.) 36 F.(2d) 454; In re Quincy Granite Quarries Co. (D. C.) 147 F. 279; Collier's Bankruptcy (13th Ed.) vol. 1, § 18, p. 689.

In this case Pamis was a petitioning creditor at the time of the hearing, for he had not been permitted to withdraw, if such permission could have been granted; and the fact, if it be a fact, that, after the filing of the petition, he settled his claim against the respondent, was immaterial. Furthermore, the common-law assignee, who in this case was the president and treasurer of the respondent, and who, in an attempt to defeat adjudication, undoubtedly acted in its behalf in settling the claim of Pamis out of the respondent's funds in his hands, could not by so doing defeat the petition. Gordon Oil Co. v. Cities Service Refining Co. (C. C. A.) 44 F.(2d) 514, 515.

We know of no case in which all the facts essential to a decree of adjudication have been found or admitted, where it has been held that the court, in its discretion, may decline to enter a decree of adjudication and

order the petition dismissed. In re Cronin (D. C.) 98 F. 584. That was what was done in this case, and we are of the opinion that the court erred in so doing. It should have ordered adjudication.

When an involuntary petition is defective in its allegations or is wanting in the requisite number of petitioning creditors, it probably is discretionary with the court whether it will allow the petition to be amended or will extend the time for other creditors to intervene, or will dismiss the petition. But, when the allegations of the petition are adequate, and the requisite number of petitioning creditors have joined, and these facts and allegations are established, it is the duty of the court to adjudicate.

In this situation it is unnecessary to discuss the question, whether the court erred in receiving testimony over the telephone, in the absence of one of the appellants, a petitioning creditor. Its solution would not seem to need discussion.

The decree of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants.